UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY A. MOORES,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | No. 2:14-cv-2243-EFB<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties' cross-motions for summary judgment are pending.[1] For the reasons discussed below, plaintiff's motion is granted, the Commissioner's motion is denied, and the matter is remanded for further proceedings.

/////

/////

/////

---

[1] Plaintiff filed a request for the court to hold a hearing on the cross-motions for summary judgment. ECF No. 20. The court finds that oral argument would not be of material assistance to resolution of the pending motions, and therefore plaintiff's request for a hearing is denied.

1

I.     BACKGROUND

Plaintiff filed an application for a period of disability and DIB, alleging that she had been disabled since September 17, 2009. Administrative Record ("AR") 154-160. Plaintiff's application was denied initially and upon reconsideration. *Id.* at 104-106, 108-109. On December 4, 2012, a hearing was held before administrative law judge ("ALJ") Amita Tracy. *Id.* at 43-93. Plaintiff was represented by counsel at the hearing, at which she, a third-party witness, and a vocational expert ("VE") testified. *Id.*

On December 28, 2012, the ALJ issued a decision finding that plaintiff was not disabled under section 216(i) and 223(d) of the Act.[2] *Id.* at 25-37. The ALJ made the following specific

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.

2. The claimant has not engaged in substantial gainful activity since September 17, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).

\* \* \*

3. The claimant has the following severe impairments: Lyme disease and bipolar disorder (20 CFR 404.1520(c)).

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526.

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is limited to performing simple, routine, and repetitive tasks. The claimant should not work at production rate pace, but she is able to perform goal-oriented tasks. She is limited to no interaction with the public and only occasional interaction with coworkers. She is to perform work involving things and objects rather than people.

\* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

\* \* \*

7. The claimant was born on July 6, 1969 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

    10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

    * * *

    11. The claimant has not been under a disability, as defined in the Social Security Act, from September 17, 2009, through the date of this decision (20 CFR 404.1520(g)).

*Id.* at 27-36.

Plaintiff's request for Appeals Council review was denied on August 4, 2014, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-7.

II.    <u>LEGAL STANDARDS</u>

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III.    <u>ANALYSIS</u>

Plaintiff argues that the ALJ erred in (1) failing to adequately address the medical opinion evidence of record, and (2) rejecting her testimony without legally sufficient reasons. ECF No.

4

12-1. Medical opinions were provided by a treating physician and a treating nurse practitioner. Consultative opinions were obtained from an examining psychologist, and from a non-examining physician and a non-examining psychologist

Plaintiff first argues that the ALJ failed to properly weigh the medical opinion evidence of record. *Id.* at 12-1 at 22-30. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester*, 81 F.3d at 834. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining medical professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

On August 26, 2011, nurse practitioner Rachelle A. Goering completed a Residual Functional Capacity Questionnaire. AR 461-469. She reported that she had been treating plaintiff since March 2007 for Lyme disease and bipolar disorder. *Id.* at 461. Plaintiff's symptoms included nonrestorative sleep, chronic fatigue, morning stiffness, muscle weakness, irritable bowel syndrome, premenstrual syndrome, breathlessness, anxiety, panic attacks, depression, chronic fatigue syndrome, and pain in cervical spine and feet. *Id.* at 461-462. She

opined that plaintiff's symptoms were severe enough to interfere with attention and concentration necessary to complete even simple tasks 40 percent of the time, and that she was incapable of performing even low stress jobs. *Id*. at 462. It was Ms. Goering's opinion that plaintiff could only walk one block without rest or severe pain; sit for six hours in an eight hour work day; and stand/walk for less than 2 hours in an 8-hour workday, but for only 10 to 15 minutes at one time. *Id*. at 463-464. She further opined that plaintiff could lift 10 pounds occasionally and 20 pounds rarely; would require unscheduled one hour breaks every 20 to 30 minutes; could rarely perform postural activities; and would be absent from work three or more days a month. *Id*. at 464-465. It was also her opinion that plaintiff could only work about 2 hours per day and was unable to engage the public or co-workers due to being easily stimulated, mental fogginess, and high anxiety. *Id*. at 465.

Plaintiff's treating physician, Dr. Eleanor Hynote, agreed with Ms. Goering's opinion and subsequently signed the Residual Functional Capacity Questionnaire Ms. Goering completed. *Id*. at 530-534. Dr. Hynote also completed a Medical Source Statement for Neuroborreliosis/ Neurologically-Involved Lyme Disease, which is dated June 12, 2013, after the ALJ's decision. *Id*. at 456-552. In that statement, Dr. Hynote opined that plaintiff could walk two to three blocks without rest or severe pain, sit for 45 minutes at one time, stand for 10 minutes at one time, and sit and stand/walk for less than 2 hours in an 8-hour workday. *Id*. at 549. It was also her opinion that plaintiff would need to shift positions at will, walk around for 15 minutes every hour, and would need to take unscheduled breaks "very often" for 2-3 hours. *Id*. at 550. Dr. Hynote further opined that plaintiff would need to keep her legs elevated when seated; could occasionally lift 20 pounds; rarely perform postural activities; and was limited in reaching, handling, and fingering. *Id*. at 551.

Plaintiff underwent a comprehensive psychiatric evaluation, which was conducted by Silvia Torrez, Psy. D. *Id*. at 448-454. Plaintiff reported that she was seeking disability benefits due to Lyme disease and bipolar disorder, which she treated with homeopathic remedies and supplements. *Id*. at 448-449. Dr. Torrez diagnosed plaintiff with bipolar disorder not otherwise specified and alcohol abuse, in remission. *Id*. at 453. She found that the likelihood of plaintiff's

1  condition improving in the next 12 months was fair but that her attitude towards seeking
2  employment was poor. *Id*. Dr. Torrez opined that plaintiff had a good ability to understand and
3  remember very short and simple instructions and to sustain an ordinary routine without special
4  supervision. *Id*. at 453-454. She further opined that plaintiff had a fair ability to understand and
5  remember detailed instructions; accept instructions from supervisors and respond appropriately;
6  complete a normal workday and workweek without interruptions at a constant pace; interact with
7  coworkers; and deal with various changes in the work setting. *Id*. It was also her opinion that
8  plaintiff had a fair likelihood of deteriorating in the work environment. *Id*. at 454.

9  The record also contains a Mental Residual Functional Capacity Assessment completed by
10 Dr. Winston Brown, a non-examining physician. *Id*. at 501-504. Dr. Brown opined that plaintiff
11 was moderately limited in maintaining attention and concentration for extended periods,
12 completing a normal workday and workweek without interruptions from psychologically based
13 symptoms, responding appropriately to changes in the work setting, and setting realistic goals or
14 making plans independently from others. *Id*. at 503. It was his opinion that plaintiff was able to
15 perform work where interpersonal contact is routine but superficial and that she would require
16 supervision for routine tasks. Dr. Brown's opinion was subsequently affirmed by non-examining
17 psychologist Sheri L. Simon, Ph.D. *Id*. at 523.

18 Non-examining psychologist Tawnya Brode, Psy.D. also completed a Mental Residual
19 Functional Capacity Assessment. *Id*. 527-529. She opined that plaintiff was moderately limited
20 in interacting appropriately with the general public and in accepting instructions and responding
21 appropriately to criticism from supervisors. *Id*. at 528. It was Dr. Brode's opinion that plaintiff
22 was able to understand and remember work locations and routines, maintain adequate attention
23 and concentration, sustain a workday/workweek schedule, interact with others in a superficial
24 manner, adapt to changes, and respond to hazards. *Id*. at 529.

25 Plaintiff first argues that the ALJ failed to give legally sufficient reasons for rejecting the
26 opinion provided by Dr. Hynote and Ms. Goering. ECF No. 12-1 at 22-28. In assessing
27 plaintiff's RFC, the ALJ gave little weight to the opinion provided by Ms. Goering, and later
28 affirmed by Dr. Hynote, while giving great weight to the opinions from the non-treating sources,

Drs. Torrez, Brown, and Brode. *Id*. at 34.  Dr. Hynote was plaintiff's treating physician and provided an opinion assessing plaintiff's physical limitations as well as mental limitations, while examining and non-examining physicians Drs. Torrez, Brown, and Brode only provided opinions concerning plaintiff's mental limitations.  Accordingly, Dr. Hynote's opinion regarding plaintiff's physical limitations is uncontradicted and could not be rejected absent clear and convincing reasons.[3]

The ALJ provided the following explanation for why he rejected the opinion provided by Dr. Hynote and Goering:

> Ms. Goering's opinion is given little weight because the objective medical evidence does not support such severe functional limitations on the part of the claimant.  In addition, the undersigned accords little weight to Ms. Goerging's opinion because a nurse practitioner is not an "acceptable medical source" (20 CFR 404.1513 416.913).  Furthermore, the claimant's lack of medical treatment and her overall activities of daily living are inconsistent with a complete inability to work."

AR 34.

As an initial matter, the ALJ fails to acknowledge that Dr. Hynote provided a treating-source opinion.  The ALJ acknowledges that Dr. Hynote signed the Residual Functional Capacity Questionnaire completed by Ms. Goering, but ultimately treats the opinion as only given by Ms. Goering. *Id*. at 33-34.  The ALJ consistently refers to the opinion as that of Ms. Goering and disposes of it with reduced weight because Ms. Goering is a nurse practitioner and not a medical doctor. *Id*. at 34.  The effect is to ignore entirely Dr. Hynote's participation in providing a medical opinion as to the plaintiff's functional capacity.  Yet the record contains two copies of the Residual Functional Capacity Questionnaire, one containing only Ms. Goering's signature, *id*. at 461-465, and another copy that includes Dr. Hynote's signature, *id*. at 530-534.  This evidence

---

[3] The record contains a case analysis completed by Dr. Jerry Thomas.  AR 447.  Dr. Thomas opined that plaintiff's impairments were non severe, finding that there was no medically determinable impairment noted in the medical evidence of record. *Id*.  The court finds no basis for treating Dr. Thomas's statement as an opinion contradicting Dr. Hynote's opinion.  First, the ALJ makes no reference to Dr. Thomas's case analysis.  Second, the ALJ implicitly rejected Dr. Thomas's opinion by specifically concluding that plaintiff's severe impairments included Lyme disease and bipolar disorder.

1 establishes that Dr. Hynote reviewed the opinion initially provided by Ms. Goering and adopted it
2 as his her own. Thus, the fact that Ms. Goering is not an acceptable medical source under the
3 Commissioner's regulations, *see* 20 C.F.R. §§ 404.1513 & 416.913, provides no basis for
4 rejecting Dr. Hynote's opinion.

5 The ALJ's other reasons for rejecting Dr. Hynote's uncontradicted opinion are not clear
6 and convincing. First, the ALJ rejected Dr. Hynote's opinion because "the objective medical
7 evidence does not support such severe functional limitations on the part of the claimant." This
8 conclusory statement, without any explanation, falls short of satisfying the clear and convincing
9 standard. As explained by the Ninth Circuit:

> To say that medical opinions are not supported by sufficient objective findings does not achieve the level of specificity our prior cases have required even when the objective factors are listed seriatim. The ALJ must do more than offer his own conclusions. He must set forth his own interpretation and explain why he, rather than the doctors, are correct.

14 *Regenniter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999). The ALJ
15 provides no such explanation for his conclusion that Dr. Hyote's opinion is not supported by
16 objective medical evidence.

17 Furthermore, objective evidence appears to support Dr. Hynote's opinion. Dr. Hynote
18 indicated that plaintiff's physical symptoms include nonrestorative sleep, chronic fatigue,
19 morning stiffness, muscle weakness, and pain in the cervical spine and feet. AR 530-531. The
20 ALJ specifically found that plaintiff's severe impairments include Lyme disease, *id*. at 27, and
21 "[s]ymptoms of Lyme disease include fatigue, chills, fever, headache, muscle pain and weakness,
22 a stiff neck, speech problems, joint swelling, memory and concentration problems and vision
23 problems." *Pugliese v. Astrue*, 2012 WL 4061355, at * 2 n.9 (M.D. Penn. Sept. 14, 2012). The
24 fact that plaintiff has tested positive for Lyme disease provides an objective basis for Dr.
25 Hynote's opinion. *See Morgan v. Colvin*, 2013 WL 6074119 (Nov. 13, 2014) (concluding that
26 positive blood test for Lyme disease provided an objective basis for physician's opinion that
27 plaintiff was functionally limited due to aches and pains). Thus, the ALJ's conclusory statement
28 /////

1 that Dr. Hynote's opinion is unsupported by objective evidence is not supported by the record or
2 any explanatory analysis and is not a legitimate basis for rejecting his opinion.

3 Lastly, in rejecting Dr. Hynote's opinion, the ALJ found that plaintiff's "lack of medical
4 treatment and her overall activities of daily living are inconsistent with a complete inability to
5 work." AR 34. An ALJ may reject the opinion of a treating physician who prescribed
6 conservative treatment, yet opines that a claimant suffers disabling conditions. *Rollins v.
7 Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). But here, the record indicates that Dr. Hynote
8 prescribed medication to treat plaintiff's Lyme disease. Treatment notes from September 2010
9 indicate that plaintiff was doing well on antibiotics. AR 406. She reported that pain in her body
10 and joints were clearing, and that she experienced less fogginess. *Id*. However, the following
11 month plaintiff reported that her symptoms had returned and that she was having difficulty
12 sleeping and experiencing issues with low energy and body pain. *Id*. 408. Plaintiff attributed her
13 reports of improvement during the previous visit to a manic episode. *Id*. Plaintiff was directed to
14 continue taking Zithromax and was prescribed Mepron. *Id*. In November 2010, plaintiff reported
15 that her energy was still low, but that her joint and body pain were "under control." *Id*. at 407.
16 She also stated that she had not started Mepron, as she had been denied Medi-Cal. *Id*. Treatment
17 notes form December 2010 reflected that plaintiff was continuing to take her a Zithromax, but
18 stated that she could not afford Mepron.[4] In May 2011, plaintiff reported that she did not fill her
19 prescription for antibiotics because she was "running out of money."[5] *Id*. at 470.

20 The record shows that Dr. Hynote treated plaintiff's Lyme disease with prescription
21 medication and while plaintiff eventually stopped taking her prescribed medication, it was due to
22 a lack of funds and not Dr. Hynote's decision to cease the treatment. Thus, the ALJ's conclusory
23 statement that Dr. Hynote's opinion is inconsistent with plaintiff's "lack of medical treatment"
24 does not provide a clear and convincing reason for rejecting her opinion.

---

[4] Plaintiff testified at the hearing that one of the medications she was prescribed cost more than $1,000 for one month's prescription. AR 77.

[5] The ALJ states that plaintiff stopped all prescription in December 2012 (AR 32); however, the record indicates that she stopped sometime in mid-2011. *Id*. at 470.

10

Furthermore, it is unclear precisely how plaintiff's reported activities are inconsistent with Dr. Hynote's opinion. In assessing plaintiff's credibility, the ALJ summarizes plaintiff's daily activities, AR 32-33, but the ALJ fails to specify which activities were inconsistent with the limitations assessed by Dr. Hynote. *Cf Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (finding that the ALJ erred by "not elaborate[ing] on *which* daily activities conflicted with *which* part of Claimant's testimony.") (emphasis in original). This is especially problematic given that plaintiff's reported activities are limited. As noted by the ALJ, plaintiff reported that she can care for her general hygiene, prepare simple meals such as soup or protein shakes, go grocery shopping, attend church, pay bills, watch television, and drive to a health food store to pick up meals.[6] *Id*. at 219-222, 449. The ability to perform these activities is not at odds with Dr. Hynote's opinion.

The ALJ did observe, however, that a treatment note from December 2010 indicated that plaintiff "goes to health food store for few hrs work-not on payroll." *Id*. at 473. One could logically conclude that maintaining the ability to work at a health food store for a few hours is inconsistent with the severe limitations assessed by Dr. Hynote. However, the treatment note provides no insight into the type of work plaintiff performed at the store, nor does indicate how frequently plaintiff was able to perform a few hours of work. Other evidence in the record, however, indicates that plaintiff's visits to the store were more social in nature and any work she performed was de minimis. Plaintiff testified that she previously worked at the health food store and that she had friends that continued to work there. *Id*. at 52-53, 219. Plaintiff also reported that her friends would prepare her meals and that she would go to the store to pick them up. *Id*. at 219. The manager of the health food store, Tina Kauffman, completed a Functional Report Adult-Third Party statement, *id*. at 270-275, which the ALJ found to be "generally persuasive except in regards to the severity of [plaintiff's] impairments," *id*. at 31. She reported that plaintiff comes to the store 2-3 days a week, and during these visits she may work on the computer for 10 minutes. *Id*. at 270. Ms. Kauffman further stated that plaintiff might talk to customers from her

---

[6] Plaintiff's friends, who work at a health food store, help prepare meals for plaintiff. AR 219.

chair but that she was unable to perform tasks that required her to be on her feet for more than five minutes. *Id.* at 270.

Thus, the limited activity plaintiff performed at the health food store was not inconsistent with the limitations assessed by Dr. Hynote. Accordingly, none of the reasons articulated by the ALJ provided a basis for rejecting Dr. Hynote's opinion.

Equally problematic in the rejection of Dr. Hynote's opinion is the lack of any explanation as to how the evidence of record demonstrates that plaintiff can perform light work with only non-exertional limitations. Light work involves lifting no more than 20 pounds at a time and frequently lifting and carrying objects weighing up to 10 pounds, with "a good deal of walking or standing." 20 C.F.R. 404.1567(b). Here, all the medical opinions that were accorded great weight addressed only plaintiff's mental limitations. Dr. Hynote's opinion is the sole assessment of plaintiff's physical limitations. The ALJ rejected Dr. Hynote's opinion, yet failed to cite to any specific evidence demonstrating that plaintiff could perform light work notwithstanding the opinion of Dr. Hynote. As noted above, plaintiff's daily activities were limited and do not demonstrate the ability perform "a good deal of walking or standing." AR 219-222, 449.

Accordingly, this matter must be remanded for further consideration of plaintiff's physical impairments and how they impact her ability to work.[7] *See Dominguez v. Colvin*, 808 F.3d 406, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.").

IV.   CONCLUSION

The ALJ's failed to apply the properly legal standard and the decision was not supported by substantial evidence. Accordingly, it is hereby ORDERED that:

1. Plaintiff's request for oral argument on the cross-motions for summary judgment, ECF No. 20, is denied;

2. Plaintiff's motion for summary judgment is granted;

3. The Commissioner's cross-motion for summary judgment is denied;

---

[7] As this matter must be remanded for further consideration of the medical evidence of record, the court declines to address plaintiff's additional arguments.

4. The matter is remanded for further consideration consistent with this order; and

5. The Clerk is directed to enter judgment in plaintiff's favor.

DATED: March 23, 2016.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE